IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 12, 2010

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| | ) | |
| | ) | VIOLATIONS: |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| | ) | |
| XUN WANG, | ) | 50 U.S.C. § 1705 |
| | ) | (International Emergency |
| Defendant. | ) | Economic Powers Act) |
| | ) | |
| | ) | 15 C.F.R. Parts 730–774 |
| | ) | (Export Administration |
| | ) | Regulations) |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | (Aiding and Abetting and Causing |
| | ) | an Act to Be Done) |

**INDICTMENT**

The Grand Jury charges that:

**COUNT ONE**

At all times material to this Indictment:

**Defendant and Other Entities**

1.  Defendant **XUN WANG** was a Chinese national and lawful permanent resident of the United States.  From in or around May 2006 until in or around September 2007, she held the position of Managing Director of Architectural Coatings at PPG Paints Trading (Shanghai) Co., Ltd. ("PPG Paints Trading").

2. PPG Paints Trading was a Chinese corporation with its principal place of business in Shanghai, People's Republic of China ("PRC"). It was a wholly-owned subsidiary of PPG Industries, Inc. ("PPG Industries"). PPG Paints Trading was engaged in the business of importing and exporting architectural, refinish, industrial and packaging coatings on behalf of various PPG Industries business units.

3. PPG Industries was a publicly-held United States corporation with its principal place of business in Pittsburgh, Pennsylvania. PPG Industries was a major global manufacturer and supplier of chemicals, glass, fiberglass, and architectural, industrial and performance coatings.

4. Company A was a Chinese distributor of coatings located in Shanghai, PRC.

5. Company B was a Chinese construction company specializing in nuclear engineering, municipal engineering, fire engineering, road engineering, and steel structure engineering. Company B was responsible for applying coatings at the Chashma Nuclear Power Plant No. II ("Chashma II") in Pakistan.

**The Export Administration Regulations, the International Emergency Powers Act, and the Department of Commerce's Entity List**

6. The United States Department of Commerce ("DoC"), located in the District of Columbia, had the authority to prohibit or curtail the export of goods and technologies from the United States to foreign countries and entities, as necessary, to protect, among other things, the national security and foreign policy of the United States. The DoC implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, which

restricted the export of certain goods and technologies unless authorized by the DoC through issuance of a valid export license.

7.   Under provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, the President of the United States had the power to regulate exports and other international transactions in times of national emergency, as triggered by national security, foreign policy or economic concerns stemming from the unrestricted access by foreign parties to United States goods and technologies.   By virtue of annual executive orders and notices issued by the President pursuant to his authority under IEEPA, the EAR continued in full force and effect at all times relevant to this Indictment.

8.   The DoC's Bureau of Industry and Security ("BIS") published a list of restricted entities (the "Entity List") found in Supplement No. 4 to Part 744 of the EAR.   Entities were placed on the Entity List because they engaged in activities that could result in an increased risk of diversion of exported items to weapons of mass destruction programs, to nuclear proliferation activities, to activities sanctioned by the Department of State, and to activities contrary to our national security and foreign policy interests.   Entities on the Entity list were ineligible to receive U.S. exported goods subject to the EAR without issuance of a valid DoC export license to the extent specified in Supplement No. 4 to Part 744 of the EAR.

## The Coatings

9.   At one of its factories in Watertown, Connecticut, PPG Industries manufactured a high-performance paint system that was tested and certified for use inside a nuclear reactor. The paint system included a two-part epoxy base coat (product codes KL65487107A and

KL65487107B), an epoxy top coat (product code KLD19140 and KLD1B), and a thinner, or solvent (product code KL4093) (together, "the Coatings").

10.     The Coatings were designated EAR 99 by the DoC, meaning they were items subject to the EAR.

### The Pakistan Atomic Energy Commission and the Chashma II Nuclear Power Plant

11.     The Pakistan Atomic Energy Commission ("PAEC") was the science and technology organization in Pakistan responsible for, among other things, Pakistan's nuclear program, including the development and operation of nuclear power plants in Pakistan.

12.     The Entity List included certain Pakistani government, quasi-governmental, and private entities that the DoC determined to be involved in nuclear or missile activities.   At all times relevant to this Indictment, the DoC's Entity List included as restricted entities the PAEC and certain of its subordinate entities, including its nuclear reactors and power plants.   As such, the knowing export and reexport of any items subject to the EAR for use by the PAEC or in its nuclear reactors and power plants, including the Coatings, was unlawful absent a license from the DoC in the District of Columbia.

13.     In 2006, Chashma II, also known as CHASNUPP II, was a PAEC nuclear power plant under construction in Pakistan.   Because it was a PAEC nuclear power plant, export and reexport of any items subject to the EAR for use at Chashma II, including the Coatings, required a license from the DoC.

14.     Section 734.2(b)(1) of the EAR defined "export" to mean, in pertinent part, an actual shipment or transmission of items subject to the EAR out of the United States.   Section

4

734.2(b)(4) of the EAR defined "reexport" to mean, in pertinent part, the actual shipment or transmission of items subject to the EAR from one foreign country to another foreign country.

### The Chashma II Contract

15.     In or around December 2005, PPG Paints Trading entered a contract with Company B for the supply of Coatings for application by Company B at Chashma II (the "Chashma II Contract").

### The License Denial

16.     Because Chashma II was a PAEC nuclear power plant, on or about January 20, 2006, PPG Industries submitted a license application to the DoC in the District of Columbia for authorization to export the Coatings for application at the PAEC nuclear power plant (the "License Application").

17.     On or about June 8, 2006, PPG Industries was informed that its License Application would be denied by the DoC.

18.     On or about June 9, 2006, PPG Industries notified defendant **XUN WANG** and other PPG Paints Trading representatives that the License Application had been denied and that they "must abide by the ruling" of the DoC.   PPG Industries further instructed defendant **XUN WANG** and other PPG Paints Trading representatives that Company B be advised as soon as possible that the License Application had been denied to allow Company A time to acquire other products.

19.     In response, on or about June 9, 2006, defendant **XUN WANG** and other PPG Paints Trading representatives informed PPG Industries that Company B had been informed of

the license denial and that efforts were being made to help Company B select a supplier of coatings other than PPG Industries.

20. At no time did PPG Industries, PPG Paints Trading, defendant **XUN WANG**, or anyone else, receive or possess a license or authorization from the DoC to export and reexport the Coatings from the United States to Pakistan for application at Chashma II.

### Export and Shipping Records

21. Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those filings are completed through the submission of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System. The SEDs and EEIs are official documents submitted to the United States Department of Homeland Security in connection with exports from the United States. An SED or EEI must be filed for every export subject to the EAR that requires submission of a license application, regardless of the value of the export or destination.

22. The SED or EEI is equivalent to a statement to the United States government that the transaction occurred as described. The SED and EEI are used by BIS, which is located in the District of Columbia, for export control purposes. Essential and material parts of the SED or EEI include information concerning the ultimate consignee for the export, the country of ultimate destination for the export, and the license authority. In many cases, the ultimate consignee, country of ultimate destination, or license authority for an export determines whether the goods may be exported a) without any specific authorization from the United States

government; b) with a specific authorization or a license from the DoC; or c) whether the goods may not be exported from the United States at all.

## The Conspiracy

23.     Beginning on or about June 15, 2006, and continuing through in or around March 2007, within the District of Columbia and elsewhere, defendant

### XUN WANG

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to:

(a) commit an offense against the United States, that is, to knowingly and willfully export and reexport, and cause to be exported and reexported certain goods, to wit, the Coatings, from the United States to Pakistan, via the PRC, for application at Chashma II, a PAEC nuclear power plant, without having first obtained the required licenses or authorizations from the Department of Commerce, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705, and Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; and

(b) defraud the Department of Commerce, located in the District of Columbia, by impairing, impeding and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export and reexport of goods from the United States to restricted entities on the Entity List without a Department of Commerce license or authorization, by deceit, craft, trickery, and dishonest means.

24.     The acts and offenses alleged herein began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and

are therefore within the venue of the United States District of Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

## Objects of the Conspiracy

25. The objects of the conspiracy were:

    a. to supply Coatings from the United States for application at Chashma II, a restricted entity in Pakistan;

    b. to conceal from the Department of Commerce that the Coatings were destined for application at Chashma II, a restricted entity in Pakistan; and

    c. to evade the regulations, prohibitions and licensing requirements of IEEPA and the EAR through deceit and dishonest means.

## Manner and Means of the Conspiracy

26. The manner and means by which the defendant **XUN WANG** and other co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a. To conceal the true end-user of the Coatings sought to be exported from the United States and to evade United States export controls, defendant **XUN WANG** and other co-conspirators caused Company A located in the PRC to submit requests for the Coatings called for under the Chashma II Contract by facsimile or other forms of communication to PPG Paints Trading located in the PRC.

    b. In turn, defendant **XUN WANG** and other co-conspirators caused PPG Paints Trading located in the PRC to place purchase orders for said Coatings by e-mail or other forms of communication with PPG Industries located in the United States.

   c. To conceal the true end-user of the Coatings sought to be exported from the United States and to evade United States export controls, defendant **XUN WANG** and other co-conspirators caused the Coatings exported from the United States to be shipped initially to the PRC before causing them to be reexported to Pakistan for application at Chashma II, a PAEC nuclear power plant.

   d. In payment for the purchased and exported Coatings, defendant **XUN WANG** and other co-conspirators caused money to be wired from Company A into a PPG Paints Trading account.

   e. To conceal the true end-user of the Coatings sought to be exported from the United States and to evade United States export controls, defendant **XUN WANG** and other co-conspirators made, or caused to be made, materially false statements concerning the identity of the end-user of the Coatings shipments in various documents, such as purchase requests and end-user statements, sent to PPG Industries in the United States.

   f. To conceal the true end-user of the Coatings sought to be exported from the United States and to evade United States export controls, defendant **XUN WANG** and other co-conspirators caused PPG Industries, or its agent, in the United States to fail to submit SEDs, and to submit an SED containing materially false information, to the United States government.

   g. Defendant **XUN WANG** and other co-conspirators caused PPG Industries to export and reexport the Coatings from the United States to Pakistan, via the PRC, for application at Chashma II, a PAEC nuclear power plant, without obtaining a license from the DoC, located in the District of Columbia.

**Overt Acts Committed in Furtherance of the Conspiracy**

27. In furtherance of this conspiracy, defendant **XUN WANG** and other co-conspirators, both known and unknown to the Grand Jury, committed, or caused to be committed, overt acts, including but not limited to the following:

(1) On or about June 15, 2006, outside the United States, defendant **XUN WANG** and other co-conspirators met with representatives of Company B and agreed upon a scheme whereby PPG Paints Trading could satisfy its obligations under the Chashma II Contract by supplying the Coatings to Company B for application at Chashma II through a third party.

(2) On or about June 15, 2006, outside the United States, defendant **XUN WANG** and other co-conspirators agreed that Company A would be the third party that would supply the Coatings under the Chashma II Contract to Company B for application at Chashma II.

(3) On or about June 15, 2006, outside the United States, defendant **XUN WANG** and other co-conspirators agreed that the end-user for the Coatings shipments under the scheme would be falsely identified as the Dalian Shi Zi Kou Nuclear Power Station, a nuclear power plant under construction in the PRC, the export of Coatings to which would not require a DoC license.

(4) On or about June 16, 2006, defendant **XUN WANG** sent an e-mail to PPG Industries wherein she described the June 15, 2006 meeting but omitted the material facts that PPG Paints Trading would continue to supply Company B with Coatings under the Chashma II Contract through a third party and would falsely identify the Dalian Shi Zi Kou Nuclear Power Station as being the end-user for the shipments.

(5)     On or about June 20, 2006, Company B caused Company A to send a purchase order to PPG Paints Trading for two shipments of Coatings intended for application at Chashma II -- namely, approximately 160 gallons of KL65487107A, 40 gallons of KL65487107B, and 40 gallons of KL4093 to be delivered in the first shipment ("the First Shipment of Coatings"), and approximately 80 gallons of KL65487107A, 20 gallons of KL65487107B, and 20 gallons of KL4093 to be delivered in the second shipment ("the Second Shipment of Coatings") – falsely stating that the two shipments of Coatings were to be used at the "Dalian Shi Zi Kou Nuclear Power Station."

(6)     On or about June 21, 2006, a member of the conspiracy caused a purchase request to be sent from PPG Paints Trading to PPG Industries requesting that PPG Industries in the United States produce the First Shipment of Coatings and deliver it to PPG Paints Trading in Shanghai, PRC.

(7)     On or about July 12, 2006, a member of a conspiracy caused an e-mail to be sent to PPG Industries falsely stating that the end-user for the First Shipment of Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(8)     In or around July 2006, a member of the conspiracy caused PPG Industries to export the First Shipment of Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery to Company A without having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(9) In or around July 2006, as the result of the false statements made by, or caused to be made by, a member of the conspiracy concerning the end-user of the First Shipment of Coatings, PPG Industries, and its agent, filed no SED for the export.

(10) On or about July 28, 2006, following the arrival of the First Shipment of Coatings in the PRC, Company A sent an e-mail to PPG Paints Trading requesting additional "export" shipping documentation related to the First Shipment of Coatings and falsely stating that the "export" documentation was necessary for "inland transportation" of the Coatings to "our Dalian nuclear power customer[]."

(11) On or about July 28, 2006, a member of the conspiracy sent an e-mail to a PPG Paints Trading representative requesting assistance in getting copies of the shipping documents requested by Company A related to the First Shipment of Coatings, and indicating that Company A was "working on the China side" to "get the goods ready for exporting."

(12) On or about July 28, 2006, defendant **XUN WANG** sent an e-mail to representatives of PPG Industries and PPG Paints Trading thanking them for acting "immediately" on Company A's request for additional shipping documentation related to the First Shipment of Coatings, and instructing a PPG Paints Trading representative to "find more details" about the documents needed by "our customer."

(13) On or about August 2, 2006, Company A deposited 146,240 Chinese Yuan in a PPG Paints Trading account in payment for the First Shipment of Coatings.

(14) On or about August 7, 2006, a member of the conspiracy caused a purchase request to be sent from PPG Paints Trading to PPG Industries requesting that PPG

Industries in the United States produce the Second Shipment of Coatings and deliver it to PPG Paints Trading in Shanghai, PRC.

(15) On or about August 15, 2006, a member of the conspiracy caused an e-mail to be sent to PPG Industries falsely stating that the end-user for the Second Shipment of Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(16) Between in or around September 2006 and in or around October 2006, a member of the conspiracy caused PPG Industries to export the Second Shipment of Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery to Company A without having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(17) Between in or around September 2006 and in or around October 2006, as the result of the false statements made by, or caused to be made by, a member of the conspiracy concerning the end-user of the Second Shipment of Coatings, PPG Industries, and its agent, filed no SED for the export.

(18) On or about September 19, 2006, Company A sent an e-mail to a member of the conspiracy asking how to deal with "domestic transportation expenses" of "RMB3369.63" and "VAT tax and fees" incurred by Company B with regard to "the first batch of . . . K&L products provided to them," a sum that included delivery costs in Pakistan.

(19) On or about September 21, 2006, a member of the conspiracy sent an e-mail approving reimbursement to Company A of the "freight expense" incurred by Company B for "the first batch of . . . K&L products provided to them" and passed through to Company A.

(20)     On or about October 9, 2006, Company A sent an e-mail to a member of the conspiracy requesting reimbursement "on the next order of ours" for "5% value of the invoice (for the 1st delivery to [Company B]) as the tax related charges" and also a "domestic transportation charge" of "RMB3369.63," a sum that included delivery costs in Pakistan.

(21)     On or about October 9, 2006, a member of the conspiracy sent an e-mail to Company A approving Company A's request for reimbursement "on the next order" for "5% value of the invoice (for the 1st delivery to [Company B]) as the tax related charges" and a "domestic transportation charge" of "RMB3369.63."

(22)     On or about October 16, 2006, Company A sent an amended purchase order to PPG Paints Trading "for the delivery to [Company B]" that reflected a purchase price of 69,020 Chinese Yuan.

(23)     On or about October 19, 2006, Company A deposited 69,020 Chinese Yuan in a PPG Paints Trading account in payment for the Second Shipment of Coatings.

(24)     On or about October 19, 2006, Company B caused Company A to send a purchase order to PPG Paints Trading for a shipment of Coatings intended for application at Chashma II – namely, approximately 80 gallons of KL65487107, 20 gallons of KL65487107B, 75 gallons of KLD19140, 50 gallons of KLD1B, and 40 gallons of KL4093 ("the Third Shipment of Coatings").

(25)     On or about October 19, 2006, Company A sent an e-mail to a member of the conspiracy seeking approval for reimbursement from PPG Paints Trading "in the form of a 'discount' in the next order" for future "re-transportation" charges incurred when "our nuclear

customer . . . has to manage by themselves to deliver the goods to their nuclear works location where the material is needed," such charges relating to delivery costs in Pakistan.

(26) On or about October 20, 2006, a member of the conspiracy sent an e-mail to Company A approving its request for reimbursement of future "transportation fee[s] as long as it is sea shipment."

(27) On or about October 23, 2006, a member of the conspiracy caused an email to be sent from PPG Paints Trading to PPG Industries containing a purchase request requesting that PPG Industries in the United States produce the Third Shipment of Coatings and deliver it to PPG Paints Trading in Shanghai, PRC, and falsely stating that the end user for the Third Shipment of Coatings was the "Da Lian Shi Zi Kou Nuclear Power Station."

(28) Between in or around December 2006 and in or around January 2007, a member of the conspiracy caused PPG Industries to export the Third Shipment of Coatings from the United States to PPG Paints Trading in Shanghai, PRC, for delivery to Company A without having obtained the requisite license or authorization from the DoC for its ultimate destination, Chashma II, a PAEC nuclear power plant.

(29) On or about February 14, 2007, a member of the conspiracy caused to be made false statements as to material facts in an SED filed on behalf of PPG Industries, namely that the ultimate consignee of the Third Shipment of Coatings was PPG Paints Trading, that the ultimate country of destination of the shipment was "China (Mainland)" and that no license was required for the shipment.

(30) Defendants **XUN WANG** and other co-conspirators failed to receive and possess, and caused others to fail to receive and possess, a license or authorization from the DoC,

located in Washington, D.C., to export any of the Coatings set forth above from the United States for application at Chashma II, a restricted entity in Pakistan.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Defraud the U.S. Department of Commerce,** in violation of Title 18, United States Code, Section 371; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2)

## COUNT TWO

28. Paragraphs 1 through 22 and 24 of this Indictment are re-alleged as if fully set forth herein.

29. On or about June 21, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant

## XUN WANG

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 240 gallons of Coatings, from the United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export and Attempted Export**, in violation of Title 50, United States Code, Sections 1705; Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT THREE

30. Paragraphs 1 through 22 and 24 of this Indictment are re-alleged as if fully set forth herein.

31. On or about August 7, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant

## XUN WANG

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 120 gallons of Coatings, from the United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export and Attempted Export**, in violation of Title 50, United States Code, Sections 1705; Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FOUR

32. Paragraphs 1 through 22 and 24 of this Indictment are re-alleged as if fully set forth herein.

33. On or about October 23, 2006, through in or around March 2007, in the District of Columbia and elsewhere, defendant

## XUN WANG

did knowingly and willfully export and reexport, attempt to export and reexport, and cause to be exported and reexported certain goods, to wit, approximately 265 gallons of Coatings, from the United States to Chashma II, a PAEC nuclear power plant in Pakistan, via the PRC, without having first obtained the required license or authorization from the DoC, located within the District of Columbia.

(**Unlawful Export and Attempted Export**, in violation of Title 50, United States Code, Sections 1705; Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

A TRUE BILL:


FOREPERSON

/s/
Attorney of the United States in and for
the District of Columbia